UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MITCHELL A. HARRIS,

      Plaintiff,

v.                          Case No. 3:21-cv-353-MMH-MCR

THE FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Mitchell A. Harris, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on March 29, 2021, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983. Harris is proceeding on an amended complaint (AC; Doc. 59), filed on September 1, 2021. In his AC, Harris presents claims against the following Defendants: (1) the FDOC; (2) Centurion of Florida, LLC (Centurion); and (3) Corizon Health, Inc. (Corizon). Harris, who alleges he suffers from the hepatitis C virus (HCV), asserts that Centurion and Corizon violated the

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Eighth Amendment when they allegedly created and implemented a cost-saving policy that sanctioned the delay of medically necessary treatment for Harris's HCV infection. Harris also contends that the FDOC violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) by delaying treatment for his HCV. As relief, Harris seeks compensatory damages, punitive damages, attorney's fees and costs, and any other appropriate relief.

This matter is before the Court on Defendants' Motions to Dismiss. See Centurion of Florida, LLC's Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law (Centurion Motion; Doc. 68); Defendant Corizon Health, Inc.'s Motion to Dismiss (Corizon Motion; Doc. 69); Motion to Dismiss by Defendant Florida Department of Corrections (FDOC Motion; Doc. 70) (collectively "Motions"). The FDOC also filed an exhibit. See FDOC Motion Ex. 1. Harris filed responses in opposition to the Motions. See Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss (Centurion Response; Doc. 76); Plaintiff's Motion in Response/Opposition to Defendant Corizon Health, Inc.'s Motion to Dismiss (Corizon Response; Doc. 81); Plaintiff's Motion in Response/Opposition to Defendant Department of Corrections' Motion to Dismiss (FDOC Response; Doc. 84) (collectively "Responses"). Centurion filed

a Reply. Defendant's Reply in Support of Motion to Dismiss (Reply; Doc. 83). And, Harris filed a Surreply. Plaintiff's Response to Defendant's Reply in Support of Defendant's Motion to Dismiss (Surreply; Doc. 86). Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[2]

In his AC, Harris brings three claims. He alleges that: (1) the FDOC discriminated against inmates with HCV, including Harris, in violation of the ADA (Count One); (2) the FDOC discriminated against inmates with HCV, including Harris, in violation of the RA (Count Two); and (3) Centurion and Corizon each were deliberately indifferent to a serious medical need when they each enforced a policy that delayed necessary treatment for Harris's HCV infection in violation of the Eighth Amendment (Count Three).[3] AC at 23-34.

---

[2] Because this case is before the Court on Defendants' Motions to Dismiss, the Court accepts the allegations in Harris's AC as true and construes them in the light most favorable to Harris. Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012). Moreover, to the extent Harris's claims in his initial Complaint conflict with those in his AC, the Court accepts the claims in his AC as true. See TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co., 959 F.3d 1318, 1327 (11th Cir. 2020).

[3] Harris explicitly pleads two counts under the ADA and RA against the FDOC in his AC. Contrary to his suggestion in the FDOC Response, Harris failed to allege an Eighth Amendment claim against the FDOC. To the extent his arguments there can be construed as a request to amend his pleadings to include an Eighth Amendment claim against the FDOC, his request is improper. A request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b); see also Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for

3

As to the specific underlying facts supporting his claims, Harris asserts that chronic HCV occurs when an individual has "a detectable HCV viral level" six months after exposure to the virus. Id. at 6. Chronic HCV causes liver inflammation and impairs liver function, and ultimately progresses to fibrosis, or scarring of the liver. Id. Severe fibrosis "may reach cirrhosis within as short a timeframe as one year." Id. at 7. Cirrhosis of the liver results in numerous complications, including liver cancer, jaundice, kidney disease, and seizures. Id. at 7-8.

The United States Food and Drug Administration approved direct-acting antivirals (DAA) for the treatment of HCV beginning in 2013. Id. at 11. Treatment of HCV with DAAs has been recognized as the standard of care since 2014. Id. at 12. Approximately 90% of HCV patients treated with DAAs were cured of HCV, whereas previous forms of treatment only cured a third of patients. Id. at 11. DAA treatment can reduce liver inflammation and slow the progression of fibrosis to cirrhosis. Id. at 12. Its other benefits include a 70% reduction in the risk of liver cancer and a 90% reduction in the risk of "liver-

---

leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)).

related mortality." <u>Id.</u> However, delaying a DAA treatment "increases the risk that the treatment will be ineffective." <u>Id.</u> at 13.

Harris entered FDOC custody on November 8, 2010. <u>Id.</u> at 17. He received an HCV diagnosis in September 2011. <u>Id.</u> Defendants did not begin providing DAA treatment to Harris until April 2018. <u>Id.</u> at 18. In October 2018, seven years after his diagnosis, Harris was given a FibroTest to determine his METVAIR score. <u>Id.</u> at 19. According to Harris, a METVAIR score measures the extent of liver scarring in a patient. <u>Id.</u> at 7. METVAIR scores can range from F0, indicating no liver fibrosis, to F4, indicating cirrhosis of the liver. <u>Id.</u> The test measured his fibrosis level to be F4, meaning Harris had cirrhosis. <u>Id.</u> at 19. Harris contends he developed liver disease and cirrhosis because of the refusal to timely provide him with DAA treatment. <u>Id.</u> at 18.

According to Harris, from September 2011 to June 2019, "routine blood draws" were used to monitor his HCV. <u>Id.</u> at 18. Throughout his incarceration, Harris "regularly inquired about the condition of his liver and requested HCV treatment[] but was consistently denied such treatment." <u>Id.</u> He did not know about the severity of his HCV because he "was told repeatedly . . . that he had nothing to worry about, his [HCV] was under control and being monitored and if he needed treatment[,] he would be provided treatment." <u>Id.</u>

5

Harris asserts the FDOC established and enforced a policy of delaying DAA treatments for inmates with HCV. Id. at 17. Centurion and Corizon,[4] medical contractors for the FDOC, also knew about and enforced the policy. Id. at 14-15. The FDOC, Centurion, and Corizon maintained the policy despite their knowledge of the serious risks to inmates with HCV, including Harris. Id. at 14, 32. Harris contends the FDOC did not implement such a policy for inmates with other serious illnesses. Id. at 17. As a result of the policy, Harris asserts that he "has suffered serious, substantial, and permanent injuries, including irreparable damage to his liver." Id. at 22.

### III. Summary of the Arguments

In its Motion, the FDOC contends that the Court should dismiss the claims against it for the following reasons: (1) Harris failed to properly exhaust his administrative remedies; (2) the FDOC is entitled to Eleventh Amendment immunity; and (3) Harris fails to state Eighth Amendment, ADA, and RA claims upon which relief can be granted. FDOC Motion at 4-16. In his FDOC Response, Harris argues the Court should not dismiss his claims because: (1) he did not have available administrative remedies; (2) the FDOC is not entitled

---

[4] According to Harris, Corizon provided medical services to FDOC prisons until May 31, 2016, and Centurion has provided medical services to FDOC prisons since February 1, 2016. AC at 5.

6

to Eleventh Amendment immunity; and (3) he states plausible claims for relief. FDOC Response at 4-16.

In its Motion, Centurion argues that the Court should dismiss the claim against it for the following reasons: (1) Harris failed to properly exhaust his administrative remedies, and (2) Harris fails to state an Eighth Amendment claim upon which relief can be granted. Centurion Motion at 5-18. Harris responds that the Court should not dismiss his claim because: (1) he did not have available administrative remedies, and (2) he states a plausible claim for relief. Centurion Response at 3-6, 10-11.

Next, Corizon asserts that the Court should dismiss the claim against it because: (1) the statute of limitations bars the cause of action against Corizon, and (2) Harris failed to properly exhaust his administrative remedies. Corizon Motion at 4-9. In his Response to Corizon's Motion, Harris argues the Court should not dismiss his claim for the following reasons: (1) he did not have available administrative remedies, and (2) the statute of limitations does not bar his cause of action. Corizon Response at 3, 5-9.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cty. Corr. and Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012) (noting that exhaustion is "a 'threshold matter' that must be addressed first") (citation omitted).[5] It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). While the Eleventh Circuit does not appear to have addressed the applicability of the PLRA to suits brought under the ADA or the RA, the language of § 1997e(a) is not limited to § 1983 claims, but also applies to challenges to prison conditions

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

brought under other "Federal law[s]." 42 U.S.C. § 1997e(a). Notably, several courts that have considered the reach of the PLRA have concluded that its exhaustion requirement must be satisfied before a prisoner can pursue an ADA claim, such as the one asserted here by Harris, in federal court. Green v. Thomson, No. 1:20-cv-19 (LAG), 2021 WL 7967925, at *5 (M.D. Ga. Sept. 9, 2021), report and recommendation adopted, No. 1:20-cv-19 (LAG) (TQL), 2022 WL 1042915 (M.D. Ga. Feb. 28, 2022) (collecting cases).[6] Because the reasoning of these courts applies equally to claims under the RA and the Court finds the reasoning persuasive, the Court applies the PLRA exhaustion requirement to all of Harris's claims.

A prisoner such as Harris, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not

---

[6] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[7] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084

---

[7] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

(11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Harris] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in <u>Turner</u>, the Court can consider facts

11

outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. <u>Bryant</u>, 530 F.3d at 1376; <u>see also</u> <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, the FDOC submitted Harris's grievance records as an exhibit to its Motion to Dismiss. <u>See</u> FDOC Motion Ex. 1. Harris has not disputed the accuracy of these grievance records, nor has he requested an evidentiary hearing. <u>Bryant</u>, 530 F.3d at 1377 n.16. Thus, the Court considers the grievance records solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Harris has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001

through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred.

13

<u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. <u>See</u> Fla. Admin.

14

Code R. 33-103.014(1).

### 3. Harris's Exhaustion Efforts

With the FDOC Motion, the FDOC provides records of Harris's exhaustion efforts. FDOC Motion Ex. 1.[8] The records show Harris submitted an informal grievance to Union Correctional Institution (UCI) on December 1, 2020. Id. at 8. His informal grievance stated:

> Sir or to whom it may concern: I have been treated for the Hep C virus. However, I am classified as Severe-Fibrosis, Stage 4. I have heavy liver scarring. I am requesting the medical department use their medical expertise to devise a diet so that my liver can heal and rebuild itself. Also[,] I am requesting the medical department to devise a vitamin regimen to assist my liver in regrowing[] the damaged, scarring of the tissue that occurred due to the lack of proper, tim[e]ly treatment of my Hep-C-infection. DAA[]s. I make these above two requested treatments with the well known fact in mind that the liver is the only internal organ that can repair itself if given the best care I can provide.

Id. On January 29, 2021, a UCI official responded that Harris had an upcoming appointment with the physician, and he should address his concerns with the physician at that time. Id.

---

[8] In their motions, Corizon and Centurion cite to grievance records in Doc. 41-1. Those records are identical to the grievance records included with the FDOC Motion, so the Court will reference only the FDOC Motion Ex. 1 for the purposes of this Order.

15

Harris filed a formal grievance on January 21, 2021. Id. at 6. The formal

grievance stated in pertinent part:

> I have been treated with Epclusa for the Hepatitis-C
> virus. I am classified as Severe Fibrosis F4. I have
> heavy liver scarring.
>
> I am requesting the medical care provider department
> to use their medical expertise to devise and implement
> a special diet to assist my liver in healing and
> rebuilding itself.
>
> I am also requesting the medical provider department
> to devise a vitamin regimen to assist my liver in
> regrowing the damaged scarring of the liver tissue
> that occurred due to the lack of proper timely
> treatment of my Hepatitis C infection with DAA[]s.

Id. On February 2, 2021, UCI responded by noting Harris's HCV "was handled

in accordance with FDC procedures and applicable treatment protocols." Id. at

7.

On February 8, 2021, Harris appealed the denial of his December 1st and

January 21st grievances. Id. at 5. He stated:

> ISSUE: Institution's Response Did Not Address Core
> Issue that UCI Medical is in Noncompliance with
> Canons of Physician-Patient Relationship. FACTS:
> Grievant submitted an inmate request on 12/1/20
> seeking appropriate treatment for his diagnosis of
> 'Hepatitis C' including a medical diet, and a vitamin
> regimen. The late response stated I would be able to
> address my concerns to a doctor scheduled to examine
> me in the near future (see attached A). Because the

16

response received 1/29/20 was untimely I filed pursuant to ch. 33-103.008 F.R.C[.] log# 2101-213-088 (see attached B) on 1-21-21. The response to that grievance stated FDC procedures and treatment protocols were followed in my case. Absent is any reference to a specific FDC procedure or protocol that addresses my grievance issues. The response is therefore unresponsive[,] and the near future examination/consultation has failed to materialize. The grievance issue of medical diet and supplemental vitamins represents a constitutional 8th Amendment claim pursuant to 42 U[.]S[.]C[.] § 300jj(e)(ii) 2019 and <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) regarding deliberate indifference and/or gross negligence as well as being contrary to the spirit of the relevant standards of the American Correctional Association. At the least the referenced FDC procedures and protocols should have been specifically cited and I should have been seen by a doctor for an examination/consultation before this date and grievance. A 2[-]month wait to address a serious medical condition exacerbates the condition and failure to provide appropriate treatment for a life-threatening medical diagnosis is clearly uncons[c]io[n]able and unconstitutional. The institution's response represent[s] deliberate indifference at its highest level. RELIEF: Immediate access to a qualified doctor who will seriously and fully address my diet and vitamin needs.

<u>Id.</u> (emphasis added). The Office of the FDOC Secretary provided the following

response:

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records

17

available to this office were also reviewed.

It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.

Records reviewed indicate that you were seen by the Physician on 2/25/2021, where you could address your medical concerns at that time.

Please be advised inmates do not have the authority to dictate staff duties or select a Provider of choice.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

Id. at 4.

On December 14, 2020, Harris submitted another informal grievance to UCI, questioning why UCI had not tested him for HCV at the beginning of his incarceration and why he did not receive DAA treatment until 2018. Id. at 14. On January 21, 2021, he filed a formal grievance that requested UCI officials respond to the questions in his December 14th grievance. Id. at 12. UCI denied his formal grievance, noting that his HCV was handled in accordance with FDOC procedure, and that Harris could not use the grievance process "to ask questions, seek information, guidance or assistance." Id. at 13. On February 8, 2021, Harris filed an appeal. Id. at 11. The Office of the FDOC Secretary returned his appeal without action:

18

> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> In your appeal, you are grieving that the medical staff didn't respond to an attached Inmate Request form you claim to have submitted. Your remedy, to the appeal, is to have the Institution to provide a response to the Inmate Request form. This is a new issue and [it] would need to be addressed at the appropriate level; since your formal grievance addressed several questions and your remedy was to have the questions answered.
>
> The Institution should have documented the formal grievance as a returned without action (not as a denial); since the grievance process is not to be utilized to ask questions, seek information, guidance, or assistance.
>
> Therefore, your appeal is being returned without action.

Id. at 10.

In their Motions, FDOC, Centurion, and Corizon contend Harris failed to properly exhaust his administrative remedies. FDOC Motion at 4; Centurion Motion at 5; Corizon Motion at 9. They argue Harris's claims against them concern their implementation and enforcement of a policy that delayed medically necessary treatment to inmates with HCV, including Harris. FDOC Motion at 10; Centurion Motion at 8; Corizon Motion at 9. FDOC further argues that Harris's claim against it concerns the policy's discriminatory effect.

19

FDOC Motion at 10. However, according to Defendants, Harris only properly grieved and appealed a request for medical staff to develop a diet and vitamin regimen. FDOC Motion at 10; Centurion Motion at 8; Corizon Motion at 9. They argue that since Harris's grievance and appeal did not concern the policy of delaying DAA treatment or the policy's discriminatory effect, Harris did not properly exhaust his administrative remedies as to the allegations at issue in his AC. FDOC Motion at 10; Centurion Motion at 8; Corizon Motion at 9.

Harris contends he did not have available administrative remedies because Defendants prevented him from filing grievances by misrepresenting the severity of his HCV. FDOC Response at 5; Centurion Response at 3-4; Corizon Response at 6. According to Harris, Defendants told him that his HCV was being monitored, and he would be notified of any changes that would require treatment, so he did not file any grievances before 2020. FDOC Response at 6-7; Centurion Response at 4; Corizon Response at 6.

### 4. **Turner** Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motions and Responses and accept as true Harris's allegations. See Whatley, 802 F.3d at 1209 (quoting Turner, 541 F.3d at 1082).

If Harris's allegations in the Responses show a failure to exhaust, then dismissal would be appropriate. See id.

The Court now turns to the allegations in the Motions and Responses concerning Harris's exhaustion efforts. Harris contends he properly exhausted his administrative remedies when he filed a formal grievance "concerning the ongoing refusal and denial of prevent[at]ive HCV after care treatment," and when he appealed the denial of that grievance.[9] AC at 3. The parties agree that Harris filed such a grievance and properly appealed it. However, Defendants FDOC, Centurion, and Corizon argue Harris did not grieve the issues in contention: discrimination based on disability or a delay in medically necessary treatment due to a cost-saving policy. FDOC Motion at 10; Centurion Motion at 8; Corizon Motion at 9.

In his Responses, Harris contends he did not have available administrative remedies because Defendants misrepresented the severity of his HCV, and, therefore, he did not know Defendants delayed medically necessary treatment or instituted a discriminatory policy. FDOC Response at 4-8; Centurion Response at 3-6; Corizon Response at 4-8. Accepting Harris's

---

[9] Harris presumably refers to his formal grievance and the associated appeal requesting a diet and vitamin regimen. FDOC Motion Ex. 1 at 6, 8.

21

view of the facts as true, the Court cannot dismiss his claims at the first step of the Turner analysis.

### 5. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motions and Responses, the Court next turns to the second prong of the Turner analysis. Here, the Court finds Harris failed to properly exhaust his administrative remedies because he did not grieve the subjects of the claims raised in his AC: a delay of medically necessary treatment based on a cost-saving policy and discrimination based on disability.

The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." Chandler, 379 F.3d at 1287 (quotations and citation omitted) (alterations in original). To properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules." Jones, 549 U.S. at 218 (quotation marks omitted). The FDOC's rules provide that informal and formal grievances must be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin.

22

Code R. 33-103.005(2)(b)2; 33-103.006(2)(d)-(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002), overruled in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007); see Harvard v. Inch, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).

In his AC, Harris asserts that Corizon and Centurion violated the Eighth Amendment by implementing a cost-saving policy that delayed medically necessary treatment to inmates with HCV. AC at 33. He also contends the FDOC discriminated against inmates with HCV by implementing the same policy. Id. at 27. In sum, the crux of Harris's claims against the FDOC, Centurion, and Corizon is a policy of delaying medically necessary treatment to save money. However, in his December 1st and January 21st grievances, Harris sought only a special diet and vitamin regimen for his damaged liver. FDOC Motion Ex. 1 at 6, 8. He did not grieve a policy that delayed his receipt of DAA treatment, or even a delay in treatment. Notably, in his appeal, Harris stated UCI's response to his formal grievance, that it treated his HCV in accordance with FDOC protocol, did not address the subject of his grievance. Id. at 5. As acknowledged in his AC, the focus of Harris's grievance was "after

care treatment," <u>see</u> AC at 3, not the alleged policy of delaying proper treatment. Such a grievance did not suffice to alert officials to the issues in contention in Harris' AC. <u>Chandler</u>, 379 F.3d at 1287.

 To the extent Harris argues he did not have available administrative remedies because the FDOC, Centurion, and Corizon misrepresented the severity of his HCV, such an argument is unavailing. While Harris asserts that Defendants' misrepresentations prevented him from filing a timely grievance, Harris could have filed for an extension of time, <u>see</u> Fla. Admin. Code R. 33-103.011(2), or the FDOC could have waived compliance with its procedures and considered an untimely grievance on the merits. Further, since approximately April 2018, when Harris received DAA treatment, he knew about the treatment and could have filed a grievance concerning the delay in his receipt of it, yet he did not utilize the grievance process until December 2020. AC at 18; FDOC Motion Ex. 1 at 8. Harris apparently knew about and had access to the grievance process because he successfully filed informal and formal grievances, as well as appealed the results of the grievances. <u>Id.</u> at 4-8. Accordingly, the Court finds Harris had available administrative remedies, and he failed to properly exhaust the claims against Defendants.

 If Harris contends his December 14th and January 21st grievances

24

sufficiently exhausted his administrative remedies, Harris's argument is unavailing. "'Courts must give deference to prison officials regarding the interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances,' and provided that the application of the grievance rules was not 'clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts.'" Stephens v. Corizon, LLC, No. 3:20-cv-70-BJD-PDB, 2021 WL 2981317, at *8 (M.D. Fla. July 14, 2021) (quoting Jones v. Frank, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008)); see also White v. Moore, 789 So. 2d 1118, 1120 (Fla. 1st DCA) (2001) (noting that courts defer to an agency's interpretation of a rule that it administers).

Harris pursued an appeal of his December 14th and January 21st grievances, and the Office of the FDOC Secretary returned Harris's appeal without action because he used the grievance process to ask questions. Doc. 70-1 at 10. Florida Administrative Code Rule 33-103.014(1)(v) provides that an informal grievance, formal grievance, or grievance appeal can be returned to an inmate without action if "[t]he inmate is using the grievance process to ask questions or seek information, guidance or assistance." The Court finds that the FDOC's interpretation of this rule was not clearly erroneous, arbitrary or

intended to prevent plaintiff from exercising his right of access to the courts. Moreover, the FDOC did not waive the procedural defect in Harris's case by denying his formal grievance on the merits because it ultimately returned his appeal without action. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[W]e hold that a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review."). Based on the above, the Court determines Harris failed to properly exhaust available administrative remedies, and his AC will be dismissed without prejudice.

## B. Defendants' Remaining Arguments

Because all of Harris's claims are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Corizon's argument that the statute of limitations bars Harris's Eighth Amendment claim against it, the FDOC's assertion that the Eleventh Amendment entitles it to immunity, and the FDOC and Centurion's assertions that Harris fails to state claims for relief. As such, as to these issues, the Motions are due to be denied without prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     Defendants FDOC, Centurion, and Corizon's Motions to Dismiss (Docs. 68, 69, 70) are **GRANTED** to the extent Defendants seek dismissal for Harris's failure to exhaust his administrative remedies. In all other respects, the Motions are denied without prejudice.

2.     Plaintiff Mitchell A. Harris's First Amended Complaint (Doc. 59) is **DISMISSED WITHOUT PREJUDICE**.[10]

3.     The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of July, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9
C:     Mitchell A. Harris, #A50605
       Counsel of record

---

[10] The applicable four-year statute of limitations has likely run as to Harris's claims against the FDOC, Centurion, and Corizon. See McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). Nevertheless, the Court dismisses Harris's claims against them without prejudice in the event that Harris could show otherwise.

27